Good morning, Your Honor. May it please the Court, my name is Matt Duckworth, with Busty and Hunt. I represent the plaintiff with Helen, as Deborah would. Counsel, is there a 54B order? Yes, and that's what I was going to start with. Where do we find it in the excerpt? In the excerpt? It starts at ER-4. Thanks. Would you like me to proceed, or do you have a question? Got it. Thanks. Under FRCP 54B, there's basically three requirements. You need to have more than one claim and a final judgment as to fewer than all claims and no just reason for delay. The problem is that, obviously, the Oregon state law of wrongful discharge based on constructive discharge theory stands alone, and the decision with respect to it is final. It's clear. The difficulty that occurs to me is that the constructive discharge as a theory of recovery under the ADEA is kind of all intertwined, and that claim is obviously going forward. So what it looks like has happened is you've got an issue that's scooped out without there being a judgment on the claim. I'm not sure if I understood, but the constructive discharge has been taken out of the case totally under Oregon law and under the ADEA. Well, yes, I understand the Oregon law issue, but the problem is it's just a theory of recovery under the ADEA. Well, there are two claims under the ADEA in this case. There's the demotion claim and the constructive discharge claim, and the reason that they are separate claims, they're based on separate or different factual scenarios. Now, the constructive discharge does include the facts from the demotion, but any events or conduct that occurred after the demotion is not relevant to the demotion except for perhaps some comments that might go to the decision-maker's intent. But all of the intolerable circumstances occurring after the demotion are separate, independent facts that go only to the constructive discharge. And under the law of the Supreme Court in Ninth Circuit, if you have facts that are separate, they don't have to be totally separate. They can be interrelated, but if you have separate facts, then you have, in essence, separate claims. And in this case, they're pleaded in one paragraph, but in essence, you have two claims here. It was illegal to demote her because of her age, and it was separately illegal to subject her to an intolerable work environment because of her age and because of her opposition to what she believed was age discrimination. It seems to me like this is kind of a hybrid. It's almost like a 1292 certification, only it's not exactly that either. And I am troubled by the prospect of having piecemeal appeals in these cases, which occur, of course, as you know, with incredible frequency. I don't think that piecemeal appeals is a problem in this case. This whole case really was about a constructive discharge from the beginning. The demotion was part of that. Well, I suppose if it's truly that's all that's going on, then it could have just brought the other claim. I mean, but if you win now, it's going to come right back up again, yes? If we win or lose, it'll come back up. The problem with the demotion claim that's left is she didn't receive a pay cut along with it. I understand what your problem with it is. There's no money at the end of the tunnel. It's front pay and back pay. I got that. Go ahead. Sorry. I have trouble with this because even though there's a 54B certification, it doesn't make any sense to me. It looks like it's just the most routine kind of partial summary judgment. The constructive discharge is ruled in favor of the dependent, and the demotion is pending. And on the face of 54B, it looks like we have jurisdiction. But then the Supreme Court's decision in Curtis Wright and our decision in Arizona State Carpenters Pension Trust, it looks like we have the authority to review that exercise of discretion to grant the 54B finding and say no. And in Arizona State Carpenters, we said no. We won't take this interlocutory appeal. And I don't see why this is any different. It just looks like a routine wrongful discharge case or routine employment discrimination case, I should say, and summary judgment on some but not all claims. I just don't get it. And I'm worried about opening the door to these things. In Arizona State, the holding was that the punitive damages, quote, claim was not a separate claim within that lawsuit. It was that there was essentially one claim based on a single set of facts giving right to recovery under several different remedies. The punitive damages required additional facts in the sense of perhaps an aggravating factor. True. We could limit if we wanted to. I think that that's a legitimate way of distinguishing and limiting Arizona State Carpenters. But to me, it makes more sense to extend Arizona State Carpenters rather than limit it because interlocutory appeals are such a bad idea generally. Why isn't that so? Just to follow up on the point, you have got a claim for age discrimination, and you've got to show an adverse employment action. And you've got to, I don't know, you could have others. In the normal ADE cases that I've seen, sometimes people go forward on three or four different theories of what could be an adverse employment action. And then the jury makes its decision. And that's the difficulty I have, and I just can't imagine anything much less efficient for the administration of appellate justice than to have each one of the adverse employment action decisions that are made before trial come here while there's still others pending. Well, if you believe that, if you find that the demotion is a separate claim from the constructive discharge, which I believe. Well, it's separate. It's a separate. I grant you. I don't know. It's so mystical when you talk about claims, you talk about an issue, you talk about a theory. It's a different adverse employment action. Well, if we were talking about a hospital work environment and a constructive discharge, I would agree that for the purposes of FRCP 54B, you would have one claim, because it would be based on the same facts. In this case, you have separate facts, and so you can separate these two claims. You can, but why should you? I mean, as a practical matter, when I was in practice and when I was on the district court, what would happen with a partial summary judgment is it was just a step towards settlement in most cases. Some things are out of the case, some stay in it. It usually settles before trial. Or if it doesn't settle, the trial is focused on what's really there. And I just can't – I agree with you that you could articulate a reason to take this interlocutory appeal, but I don't see why we'd want to. Well, if you do find there are separate claims, then the next step is to find if there's no just reason for delay. And in this case, the judge found there was, and this is an abusive discretion standard. Seems like an abusive discretion to me. Well, you bring up settlement as a – the courts have held that settlement could be one reason, that there would be no just reason for delay. And a neatly focused trial is another reason. But in this case, by getting this – by getting the constructive discharge issue decided, it can promote settlement. At this point, the defendant isn't going to be – they don't think this claim is worth anything. Their position got stronger. Correct. Well, sure. And the issue is going to come back to the court either way. So it can be taken care of efficiently by deciding it now. And then we move forward rather than having a trial. We'll never see it and we'll never have a chance to make a mistake on the law if it winds up that it settles. And if it goes to trial and the result is tolerable to both parties, we also will never see it and never have a chance to make a mistake. I believe because of the way the damages are likely to play out in this case, that it's very unlikely to settle either before or after trial. We have divergent views on what this case is worth. And having the constructive discharge issue decided would focus the efforts on both sides and what a reasonable value for this case would be. So if we lose at trial, we're going to be back here. If we win at trial and if we receive no money, we'll be back here. I had a technique when I was a district judge to separate the wheat from the chaff. You get a long complaint with a whole bunch of different claims. I used to require the party to file cross motions for summary judgment to get out the junk claims and the junk defenses so that we could figure out what to send to trial and have a usable set of jury instructions. And that's what we would do. We'd separate out a whole bunch of stuff that wasn't really there, like the statute of limitations defense where there wasn't any statute of limitations defense. I just can't imagine letting those things go to appeal. But I can certainly imagine if we decide this case in your favor, that the parties who lost on those would want them to go to appeal in order to build up either the defense or the plaintiff's valuation. Why isn't that a legitimate fear and a good reason not to take this? Do you understand what I'm saying? I'm not sure I do, Your Honor, if you could. I'm thinking district courts sometimes use partial motions for summary judgment so that they can have a focused trial on the things that are genuinely at issue. Many lawyers file their pleadings when it's pre-discovery, they don't know much about the case, and there's a lot in the pleadings that really should not go to trial because there are no facts to support it or no law to support it. But if all those partial summary judgments have the possibility of appeal, then it's much harder to get a case done in district court. Correct. And there are just myriad legal issues that get adjudicated in them. I'm not sure I have a response to your question, Your Honor. Give me a reason why it's a good thing for federal appellate courts to hear appeals of routine partial summary judgments. I don't think I would argue it is a good thing to just review routine partial summary judgments. I don't consider this routine due to the damages issue where you've got We've been left with a case with no value to it and a constructive discharge with potentially a much more substantial value. Well, if there's really no value to it, why wouldn't you just dismiss the valueless claim so you'd have a final judgment and you could take it out? Perhaps we could have done that, Your Honor. I didn't make that decision. Well, let me ask you a different question, and that is, you know, there's no question that your client felt stressed, and there were some remarks made that probably caused stress and were a little insensitive. But apart from a handful of comments and apart from some slight not getting to play golf, whatever, what is it that makes what happened to her, not what happened to other people, what happened to her so awful that no objectively reasonable person would sit still for it? Well, what happened to her was as a result of these comments and the result of watching older people being replaced with younger people, she became violent, basically very physically, mentally, and emotionally ill. She was vomiting. I'm not questioning the fact that she felt stress. I'm assuming that she felt stress at what she saw going on. But this is a question of her. We're not talking about a hostile work environment. We're talking about something that was so intolerable to her that any objectively reasonable person similarly situated would have felt, I've got to get out of here. Well, she knew she had to get out of there because she had seen the discriminatory treatment. She had been demoted. What she testified to was that she had to get out of there because she didn't think the company could afford three big salaries. Well, that was kind of the straw that broke the camel's back to get her out, but that's not why she left. She left because of her health and because of the discriminatory treatment. She had that writing on the wall meeting where he said, I know you're unhappy. I think perhaps you should consider leaving. The handwriting on the wall meeting, you could make an argument exactly opposite. That was an incredibly kind meeting, asking her if she was really happy because the boss had heard from others that she had said she wasn't happy, and so he says, look, let's have a chat. I mean, are you really happy? And she says yes. Well, I think that's something that a jury could find and that the defendant would argue, but in this case, based on the year of treatment, a jury could also find that he was looking to get rid of her and hoping she would go. Well, he might have been hoping, but he didn't fire her. He didn't fire her, but this isn't a discharge case. It's a constructive discharge case. Well, the thing about constructive discharge, the way Judge Reimer put it in terms of reasonable person is our test, as I understand it, and that means it's not like a personal injury tort case where you take the plaintiff as you find him. If he has a glass jaw and you give him a little tap and it breaks his jaw, you're liable. This is reasonable person, so the glass-jawed plaintiff does not recover if most people's jaws would be just fine. Well, I disagree slightly in the sense it's a reasonable person in the plaintiff's position, and I think in this case the plaintiff's position includes her sex and the treatment that she's received. You mean you can't ask a woman if she's happy, but it's okay to ask a man if he's happy? You can ask. Because he has a harder shell? There's some sex issue here. Is there evidence this is under the age discrimination? Well, in the plaintiff's position, I think it's her age, her woman, the fact that she's a woman. Okay. Also, what you're lacking, there's nothing they gave her that was offensive. They didn't give her bad jobs or give her things that nobody else wanted her to do. There's nothing she can point to that made her life any different than what it was all the time she was there. Well, we don't have facts like those to add to the totality of the circumstances, but that doesn't negate the conditions that she did suffer, the humiliating meetings, the comments about older workers. And then once she's demoted, she realizes that the plan that they've been using to get rid of other older workers is now going to be applied to her. She's getting sick. They have the meeting. They hire a replacement. She knows she's out the door. And the defendant can argue to the jury they were concerned for her. We'd argue to the jury that they were hoping she'd quit so they wouldn't have to pay unemployment. Didn't they lay off other people? They didn't lay her off. Excuse me, Your Honor. Didn't they lay off other people or people they let go? Some people quit. Some people were fired. Yeah, but she was never threatened with that. I believe that she was encouraged to resign, Your Honor. And she was in a position to know what they could afford. She was on her way out. They have the meeting where he tries to get her to quit. She doesn't. Are you saying that if a person works for a company and knows that they can't afford his salary and knows that the company would be a lot happier if he left, that that person is constructively discharged? No, sir, not that fact alone. It would be the totality of the circumstances in this case. That alone couldn't support a constructive discharge claim. I have less than a minute left. I'd like to stop if I could. Truly. All right. Thank you, Your Honor. Mr. Tillum. May it please the Court, Brad Tillum on behalf of the defendant in this case. Let me start with the jurisdictional issue, I think. And I feel somewhat responsible that that wasn't brought to the Court's attention by us. We argued in the district court that certification was inappropriate. And the Court's opinion, which is included in the excerpt of record, talks about some of the arguments that we made, one of which was are the age claims, is there a motion claim, or is there a constructive discharge claim that is separate? And we cited a case from the Eighth Circuit that's actually mentioned in the district court's opinion, I think it's Rayer, R-E-Y-H-E-R, that suggests that you don't. It's a claim. You have an ADEA claim, and we may have a state claim here, but you don't separate those out by theories of recovery, and I think it's quite analogous to the Miller case. And that was our pitch in the district court. Unquestionably, the wrongful discharge claim was final. But the magistrate accepted the position of the plaintiffs that the case ought to be certified as to this constructive discharge issue, certified under 54B. And, frankly, I didn't see the jurisdictional issue until we got the court's order last week. And I believe that there is an issue there for all the reasons that the panel has previously indicated, and I think that, in fact, if you look at the case and determine that there is, in fact, no claims decided under the ADEA and the state age claim that are separate or that were final, that under those circumstances, the district court abused its discretion when it made the decision to certify really what ends up being just the wrongful discharge claim and then the constructive discharge issue. And I think, quite possibly, the impact for piecemeal litigation is large, maybe even larger than we suspect because there are other issues that ultimately could be raised relative to summary judgment on the wrongful discharge claim. I mean, constructive discharge isn't the only issue there. There are potentially other issues relating to the proof of causation and those sorts of things. And to me, there is no difference here between any other summary judgment case. We haven't settled. I'm not certain, frankly, that the tenor of the settlement negotiations are going to change in any dire way relative to what, you know, this court might do. And, frankly, I have to agree from an administration justice perspective, those settlement discussions ought to be happening at the district court level based upon the record that's there. And it will either settle or not. And if we have to have a trial and then it comes back up here, we're going to be faced with the same issues. I would note one thing. If you look at the complaint in the case, there are three claims for relief, ADEA, state age claim, and a wrongful discharge claim. So, you know, I don't think it's fair to say that even the plaintiff's not, you know, what you call your claims for relief, it probably isn't dispositive or controlling. But it suggests that we all knew, everybody thought, that we were dealing with an ADEA claim that had a demotion aspect to it as well as a constructive discharge aspect to it. And so for those reasons, I think there is no jurisdiction to consider the constructive discharge issue relative to the two claims that remain in the district court, or at least that have been administratively dismissed, and the claim that exists here today. And so there was an abuse of discretion by the district court in granting the 54B motion. If the court doesn't have any questions about that particular issue, I would just say one thing about constructive discharge, but I'm happy to answer the court's questions. Do you have any more to say about whether it is generally a good or a bad idea to extend Arizona State Carpenters? From the court's perspective, well, and frankly, I think from the perspective of the litigants, it's a good idea to extend Miller to circumstances like this. I believe you avoid the sort of piecemeal litigation that is inherent, and this is. This is a routine employment discrimination case with a number of claims, and if somebody gets a bad result and all of a sudden they are able to bring it up to this court to try to facilitate settlement or that sort of thing, I think the court does not have jurisdiction over those claims. It goes both ways. I assume you do employer side. Yes. And of course it goes both ways. Absolutely. You think you have a good statute of limitations defense, and that's basically what you've got. You lose on it, and now the trial is Katie bar the door. It's even broader than that. I mean, we file most employment discrimination cases end up with summary judgment motions. That's simply, you know, because it's intentional toward, I think, like a negligence case of fender bender or something. We end up with filing a lot of summary judgment motions. Here's the big surprise. We lose some of them, and, you know, if we could just say, well, gosh, you know, we might be able to get a better settlement number if we didn't have to go through the agony of a trial and could just appeal whether or not summary judgment was appropriate in this case. That would be a great thing, but I don't. That's certainly not consistent with, I'm sure, this court's desire to make sure that it's not seen cases several times over and over again to assist the parties in settling the case. That is absolutely correct. On the constructive discharge piece, I wanted to make a correction in our brief. Counsel correctly noted that we made a mistake on a quotation. On page 11 of our brief, we cited to a case, a Calhoun case, which is a First Circuit case. That was in error. The case that should have been cited was Suarez 229F349. It's also a First Circuit case. And for that, I wanted to apologize to the court and make that correction. And unless the court has questions about the constructive discharge issue, I will sit down. I don't think so. Okay. Mr. Duckworth? Thank you. I have nothing more to add. All right. Counsel, thank you. The matter just argued will be submitted, and the court will see end of discussion today. All rise. This court is discussing the constructive discharge. Thank you.
judges: Rymer, Kleinfeld, Weiner